Good morning, Your Honors. May it please the Court, Kenneth M. Stern IV, Appellant, with a request to reserve two minutes of my time for rebuttal. Mr. Lima was a young man who had never been arrested, was gainfully employed full-time, was involved in sports, who just happened to be in the wrong place at the wrong time with the wrong people. I kind of empathize with Mr. Lima because when my automobile is being repaired, I am sometimes dependent upon others for rides, sometimes people I don't really know that well, so I could understand how he found himself in this predicament. To me, this is a clear case where he was entitled to have the jury instructed upon an entrapment defense. The standard- What was the entrapment? Who entrapped him, in other words? The entrapment was the confidential informant who kept trying to involve him in touching the bag with the drugs in it and transferring the drugs from where he was sitting over to another part of the car. He was in the backseat? He was in the backseat. And the C.I. was leaning in through the window? Yes. And was he leaning in through the window in the back or in the front? Well, he was leaning in from behind the driver, whether he was going in from behind the driver through the driver's window or through Mr. Lima's window is a little bit unclear. And the bag was where? The bag was next to initially next to Mr. in the backseat. OK, and Lima's in the backseat and he's sitting alone in the backseat. He's gone back into the car at that point. Well, he's gone into the car by the car and the informant's leaning into the car through the window. OK. And the bag is, you say, on the seat? I believe it's on the seat. Yeah. And it's got the two packages on top, right? Yeah. And he takes out sandals and I believe spray bottle. OK, so he takes those out and Mr. Pena asked him to take those out. He takes them out and that's when he sees the drugs in the bag. He doesn't know what they are, but he believes they're drugs. At that point, the confidential informant twice attempts to have him touch and move the bag. Twice he refuses. And finally, on the third time, he just kind of pushes it away from him towards Lima. Excuse me, towards Pena. You know, Pena is where? Pena, I think, was in the front seat. How does he push it? Well, he may have actually picked it up and given it to him, but not. So he had to physically hand it over to the seat. Not for the purpose of wanting to be involved. No, I'm just trying to get the facts. I don't want to get the motivation. I'm just trying to understand the scenario here. It's a little unclear. And I want to. Yeah, the drugs ended up in the front seat. Right. OK. Now, before, can I, because I'm trying to get the, since you're talking about entrapment, I'm trying to understand, you've clarified its contact between the CI and Lima. Yes. That was not the first contact between the confidential informant and Mr. Lima. First contact came when they arrived, correct? Yes, there was a brief introduction, just hello. He was introduced. What does the record show as to who made the introduction? Just tell me what it shows. I believe it was the person that, that had at that point driven Mr. Lima to the place where the transaction took place. It was that driver. They all got out, went over to a confidential informant. The driver introduced Mr. Lima to the informant. So there was a brief conversation then. And what is the record on what nobody overheard or recorded? Did anybody testify to the content of the conversation? I don't think they did. No, it's not in the record. And there's no indication or proof by the government that any discussion about drugs was made at that. There's a government agent who testified that there was a sign of recognition, correct? Well, I don't believe there was a recognition. I think there was just an introduction. I'm just talking about what is their testimony. I thought there was testimony of the agent said he perceived that the informant or Lima, I can't remember which now, face indicated to him as to the agent recognition that they had met before. Is that in? That's part of the record. I don't recall that. I believe if it was, I think that's. Didn't that relate to the arrival of the car containing the drugs? I thought that's how I read it. Excuse me? But the agent testified that Lima and Pena both reacted in such a way that they appeared to recognize that when the car arrived containing the second car arrived, that they recognized that or I'm not quite accurately characterizing what they what he actually said. But isn't that the recognition that Judge Fisher was questioning about? Well, wasn't there testimony to that when the car arrived? There may have been some recognition of the vehicle because at some point in time, one of the people driving the person initially driving Mr. Lima said, oh, well, here, so and so will take you the rest of the way. So Mr. Lima had gotten out of one vehicle and into another vehicle. Well, Lima had seen that car before, right? At the, I don't know what you'd call it, the switch location, the staging area at the swap meet where he was driven after he accompanied the person to pick up the drugs at the storage shed. So he'd seen that car before, hadn't he? I think he may have, but only from within the context of having started the ride with one person, then being asked, they stopped somewhere and said, so and so will take you the rest of the way. So, yeah, I don't think that's a problem in terms of whether or not an entrapment instruction should have been given. What's this? What case would you cite us to with regard to your entitlement to an entrapment instruction when the introduction occurs in the middle of an ongoing drug transaction? Well, Girola case cited in my brief says only slight evidence is needed to go to the jury on that. And the slight evidence would be what you told us about earlier? In terms of the inducement, a CI is considered to be a government agent in terms of entrapment. The inducement is is him three times asking Mr. Lima to touch the drugs and move the drugs. That would be an inducement. Explain it to me. And I thought I thought the testimony was the CI was leaning in the window and he was counting the pieces. This is black car heroin, right? So he's counting the pieces and he's trying to, I don't quite know how this occurred, but he's trying to place the drugs in such a way that he's sort of putting the pieces closer to Lima. Is that how the testimony is? He actually asked Mr. Lima on three different occasions to hand the bag over. And twice, Mr. Lima refused. And then finally, you know, he was very scared. He finally, he was scared of these people, not to mention what was going on. And finally, the third time, he just kind of gave them to Peña to get them away from him, not with any intent to distribute the drugs or be involved in the transaction. The agent kept coercing him into touching that bag. And finally, he relented to that persuasion and just got them away from him and over to Mr. Peña. So I think that's the government inducement. And then in terms of predisposition, there's five elements. The character or reputation of defendant. Well, the evidence was he was a law-abiding citizen, never been involved, and he preferred testimony that he had never been arrested and the court improperly excluded that. But it's improper if we agree with you that he was entitled to an entrapment instruction, right? Otherwise, it's an abuse of discretion as to whether or not it's wrong. If he was entitled to entrapment, I'm not sure that his never being arrested would necessarily be relevant. It was relevant to that. That's what I'm saying. In other words, we would have to agree with you that he was entitled based on your earlier argument before we could find it an abuse of discretion. And then another element is that if the government made the first suggestion, here it did, he was asked three times to touch those drugs. There's no showing that it was any profit going to appellant. That's one of the factors. And in fact, in terms of the substantiality of evidence consideration, that's also a factor. There's no showing he had a stake in the drugs. Was appellant reluctant? Yes. Twice he refused to touch that bag. And it was only his being controlled on the third time that he tried to get them away from him. And the nature of the government's inducement was through their agent, the CI, that he finally gave in. His will was overcome. And he just kind of, on the third request, got them away from him. So I believe that he had sufficient evidence there to go to the jury on that. What kind of quantity are we talking about here? I believe it was approximately 30 ounces. 30 ounces. And I take it they were packaged in several different, or they're wrapped in tinfoil or something? Well, they were sufficiently clearly identifiable that when the other items were taken out of the bag and appellant looked in there, then he realized this was a drug transaction going on. From the way they were packaged or something? I, well, I believe there was some sort of clear wrapping. Clear container. What about odor? There was some mention or emphasis made on... You know, I don't know if, you know, appellant would know what that odor is. A DEA agent who's familiar with heroin would know what that odor was. Does the record show the degree of the odor, aside from the character? Well, I think it was mentioned that when the storage locker was opened, there was a strong odor in the storage locker. But how about that I'm familiar with, but in the car? I don't recall there being an odor necessarily emanating from the bag. And where, what does the evidence show where the bag was before it wound up in the back seat? Well, it was in the vehicle before appellant actually got into the vehicle. I believe, I believe the appellant got out of one vehicle, got into the other vehicle, and then the bag had been placed there already. So he didn't, the first time he was proximate to the bag? Was when he got into the vehicle. Wait a second, I'm confused. I thought they picked it up from the storage locker. From the storage locker, it was picked up, but there's no showing that he looked in the bag at that time or knew what was in there. That's what I'm trying to understand. My understanding is it came out, he did not go into the storage locker. No, he did not. It was brought out and was it put in the back, was it at that point, what was it in the sable or it went into a pickup truck? I thought it was in a Jeep Cherokee. Cherokee. Yeah, when it was picked up, it was in a Jeep Cherokee, but then I believe it was transferred to a Mercury Sable. Right. So when it went into the Cherokee, what's the evidence as to where it was placed in the Cherokee? I don't recall exactly where in the Cherokee it was, but it was never given to Mr. Lima. It was never in his possession. No, that I understand. I'm just trying to follow through on this odor thing. Was he in the Cherokee where it was smellable? That is the heroin? No, it was an open air vehicle, I believe, so. It doesn't have a concealed or a sealed trunk, right? A separate sealed trunk. No, I believe it was in the passenger compartment somewhere, but again, there's no showing that he could smell it or he would know what it smelled like. And in terms of, I think there was an argument in Apelli's brief that, well, it wouldn't matter since the entrapment defense would have been inconsistent with the jury's findings anyway. I believe the jury could have found that he did intend to participate in the drug transaction once he had been induced to or persuaded to. So I believe they could have found him guilty upon that, assuming there was substantial evidence, which for what I explained in my briefs, I don't believe there was. I don't think that's inconsistent with there having been an entrapment defense because the jury could have found that he did intend to transfer the drugs, but without knowing that or being instructed that they could find that he was not guilty because that intent was created by the entrapment. I believe the entrapment defense is consistent with the jury's findings. They simply were not allowed to get to the defense, and had they been allowed to do so, could very well have found that it existed. You may want to save your, is there, you can save your time if you want to save it for a moment. Yeah, I'd like to save a couple of minutes. I'd like to touch upon the substantial evidence issue just briefly. I believe this is one of those rare cases where there was not substantial evidence, and I point the court to the Vasquez-Chan case where there was much more evidence in that case of the person's involvement with the drugs involved in that case, and the court found that there was no substantial evidence there. The drugs were in her bedroom. There was just showing she knew the drugs were in her bedroom. In these containers, there was showing she had opened the containers and had touched the containers and moved the containers, and yet the court found there wasn't substantial evidence because her explanation of touching, which would have exculpated her, was at least as likely as the incriminating explanation, and I believe you have the exact same situation here. I believe that Mr. Lima's explanation for his being there is at least as compelling as the government's explanation of guilt, and this was a case and there was no, there was no wiretaps, there was no evidence whatsoever prior to this drug transaction actually occurring from the time the drugs were picked up and exchanged that Mr. Lima had any involvement or knowledge of this whatsoever. There has to be... Was there evidence about how long he had known these various individuals that were... There was somebody he had worked with for about a month, and one of the individuals he had met at like a, at a soccer game, so he barely knew them. Did he, when did he meet Romero? I believe Romero was the person that he met at the soccer game. How did he arrange for the ride home? He was going to, he thought he was going to be riding the rest of the way with Gutierrez? Well, he, he asked, originally asked for the ride home with his, his co-worker, I believe that was... Gutierrez. Mr. Gutierrez, George Gutierrez, and then Mr. Gutierrez brought Mr. Lima to an auto parts store, and I believe that's where he met Mr. Romero, and I believe he had met Mr. Romero at a, at a soccer game once. Did any of those other defendants who pleaded guilty, did any of them testify in this case? None of them testified, and none of them testified for the government, and none of them said that Mr. Lima was involved in this. Really, all you have is Mr. Lima being there in the back seat of the... Wait a second, are you saying that they, they gave exculpatory statements? No, no, they didn't. They didn't say anything? No. Everybody kept their mouth shut. They did not incriminate him. They did not testify for the government and say, yes, Mr. Lima... He made several statements, which, some of which were used against him in... Yeah, he made some statements which, you know, were not accurate, and he said he made the statements because he was scared. That may seem somewhat inculpatory, but, but I don't believe, you know, he's a 19-year-old kid, no prior involvement with the law, and, and that's somewhat understandable. I would like to reserve the rest of my time for the hearing, please. Thank you. May it please the Court, Brent Tavace on behalf of the United States. The facts in this case support both the jury verdict and the judge's decision to deny an entrapment instruction. Excuse me, Your Honor. When you look at the totality of the circumstances in this case, there was more than sufficient evidence to sustain the jury's verdict. You know, I, I, I have some trouble with that. Looking at some of our prior cases, including Vasquez Chan, what case does the government look to where there has been a conspiracy upheld on these kinds of facts? What's your closest case? Well, Your Honor, I don't know if the government can point to one particular case. Oh, but there are cases like Vasquez Chan, which are comparable and find the evidence insufficient. Well. So where's the one that, how has he gone beyond being merely present? Well, if I may first distinguish Vasquez Chan. Sure. In those, in cases such as Vasquez Chan, the court took pains that the defendant in those cases were not actually picked up or inculpated during an actual drug transaction as we have in this particular case. As I recall in Vasquez Chan, the evidence was seized from the home. There was evidence of the. It was in her bedroom, wasn't it? It was in her bedroom. That is correct. And her fingerprints. Right. So there was evidence on the drugs, but there was no evidence linking her with a drug transaction per se. Here, I mean, in a case such as Vasquez Chan, really the only connection, the only nexus is the fact that they found the person sitting next to the drugs. Here there is more evidence than that. And if I may correct one. Well, how about Wiseman? The evidence against Wiseman consisted of three pieces of evidence. He drove a car which had been loaded with marijuana and which was described as having a strong smell inside it. Before parking the car, he drove unusually or suspiciously. And after he was arrested, he asked some questions about presence of marijuana at Branson's house. Each of these are consistent with totally innocent explanations. That may be true, Your Honor. If I may. Because I've looked at the other cases that you cite, and there's always the guy's doing something. He's doing counter surveillance. He's doing something that's more than just being merely present. So I'm wrestling with it. Well, I would point the court to the United States versus Magellan-Jimenez. It's 219 F. You do do that, but that's a possession case, not a conspiracy case. Because there they found, that's what troubles me, too. There the district court threw out the conspiracy. So there was insufficient evidence. That turned on possession. Well, Your Honor, here the defendant does not contest the existence of a conspiracy. Well, no. The question is whether he's part of it. That's correct. But once the existence of the conspiracy is established, the government need only present slight evidence. Excuse me. I misstated that. There needs to only be a slight connection of this particular defendant to the conspiracy. No, I understand. But you're citing that case, and it found that Magellan is not a conspiracy. It rejected the conspiracy. You are correct, Your Honor. It is more of a possession case. It's more. It's only. I mean, that's a big difference here. Well, let's go back to this conspiracy case. Why didn't you ask for a Pinkerton instruction? That is a very good question, Your Honor. Do you have a very good answer for it? I do not. I do not. There was an aiding and abetting instruction offered here. But the aiding and abetting, you still have to show, knowing an intentional conduct with a Pinkerton instruction, all you'd have to show is that he entered into the conspiracy and that this was a reasonably foreseeable act, whether he knew about it or not. That's a huge difference. That is correct, Your Honor. I do not know why the government did not ask for a Pinkerton instruction in this case. I think that you were not trial counsel. I was not the trial counsel, Your Honor. Okay. Yeah, you're too young to have a senior moment and forget something like that. That's exactly right. Perhaps too young, too, to fear to not to include that. If I may, though, in terms of evidence, one aspect of the government's brief that was perhaps an oversight and we should emphasize more heavily was the fact that there was a transcript. The CI was wired at the location. But they weren't able to, I mean, the DEA people weren't able to identify Lima's voice on that transcript. That is correct, Your Honor. They were not able to identify the voice. But Mr. Lima was present at the time and the CI and Mr. Romero and several of his confederates were engaged in a conversation outside of the Mercury Sable before Mr. Lima gets into the Sable. The Sable is going to be his ride home, right? According to him. Well, of course it's according to him. I mean, the government has the burden of proof here. And so, you know, taking my cue from Wiseman and some of these other cases, which grant all of what you said, you know, it only takes a little bit of evidence. But everything is consistent with his being, getting a ride home. I mean, he doesn't go into the storage locker. He gets out, he gets out of the car. There's no, there's nothing that, there's nothing the CI, the informant hasn't ever identified him. So it really, you know, this problem of his just being there and it looking suspicious, our cases have said it takes a little more than just that. And I'm looking for the little more than just that. Well, Your Honor, I would point the court to the defendant's own admissions here that he admitted to the switching of the vehicles. He first admitted that he went to the storage locker. He initially denied any involvement in the conspiracy. And the fact that he changed his story to the DEA is inculpatory here. He admitted that he switched vehicles. He switched vehicles. He got from one vehicle to another vehicle. That is correct, that he went to the staging area, that there was a transfer of the package. He entered another car. He testified that he had just met Mr. Romero at that time. Had not met him at a soccer thing? I don't believe so, Your Honor. The other two defendants here, Mr. Payne and Mr. Gutierrez, I believe that Mr. Lima testified that he had met them on previous occasions. I think through work or through soccer, through some activity. But he testified that he had just barely met Mr. Romero. That that was the first time that he'd met him. And yet he gets in the car with him and then drives to this third location all to get a ride home. Well, counsel, I've been there done that. Hopefully not in the middle of a drug transaction. No, I don't recognize the smell of black heroin. That's my story and I'm sticking to it. But once arriving at the buy site, Mr. Lima gets out. He greets the CI. No, we say he greets the CI. What's the exact testimony? The testimony of the DEA agent observing this was that Mr. Lima walked over to the CI and shook hands. Was he with Pena then? Or somebody else with him? He was with Mr. Romero at the time. Somebody introduced him to the CI? That is unclear. Mr. Lima's testimony was that That term greets is kind of a favorite term from my reading over the years of DEA. DEA. Kind of like exiting the vehicle. And contacting. Yes, exactly. But Mr. Lima attempts to portray that the first time he has any clue that there's a drug transaction going on is when he gets in the backseat of the vehicle. And he's standing in close proximity to a conversation that is recorded between the CI and Mr. Romero in which they are clearly talking about a drug transaction. They're talking about quantities 29. The CI makes a comment about I think we can come to a good agreement here. Mr. Romero is noted on the tape saying that I think there are cops over there. The CI responds, well, I've been here a long time. I'm going to be in trouble pretty much. There's some fishy things going on here. And Mr. Lima is now throwing up his hands and saying, well, I didn't know there was a drug transaction going on. You have the switching of the vehicles. You have the heroin in the car with him. And the DEA chemist testified that the smell of this stuff is overwhelming. The DEA agents who inspect the locker when he opened it up again said that the smell was overwhelming. He didn't go to the locker? The DEA chemist? No, no. Lima stayed in the car, right?  How far was the car from the locker? The record does not reflect that. How were the drugs packaged? The drugs were packaged in individual units. I do not know. The record does not reflect if they were clear or if they were wrapped in foil. It seems that given Mr. Lima's testimony it was clear packaging because he states that he recognized or at least suspected that there were drugs involved when he looked inside the package. Did you plan to talk about the possession count? He was convicted of two counts. Assuming that he was properly convicted of conspiracy I'm trying to figure out what was the evidence that he ever exercised any dominion and control over that bag that had the contraband in it? The government's position on that would be the general coordination indicated his stake in this venture and the fact that he gets into the back seat of the car and he sits right next to the drugs. It is not typical for drug dealers to allow someone who has no stake in the venture to sit next to 800 grams of heroin that has a street value of roughly $12,000. It would be quite anomalous the government would pause it to allow Well if these people are kind of folks that carpool together and go riding home from work and so on the fact that there's something valuable sitting on the car seat wouldn't alarm anybody I've gotten into cars with all kinds of stuff that I don't know what's in their packages or coming back from Bloomingdale's or somewhere True Your Honor I think the government would pause it that drug dealers are less trusting than perhaps someone who has a legitimate legal item in their car as opposed to a contraband If you Your Honor would take something from someone's car they can report it to the police Hey someone stole my diamond Here though there's really no recourse if someone swiped something from a drug dealer No Your Honor Mr. Pena was in the front seat of the car The testimony seems to reflect that Mr. Pena was leaning through the front window of the car The confidential informant was on the driver's side, passenger's side of the car So the C.I. was in the car? He was not in the car, he was outside of the car leaning in So Liam is in the car with two others leaning in through windows? That is what the testimony reflects So he's alone sitting next to the package? For how long? Alone in the sense that there's nobody outside leaning in That, not very long at all Your Honor He does step into the car The testimony reflects that shortly thereafter the confidential informant came up to the window There was a driver in the car though Mr. Lima was not in the vehicle by himself There was a driver on the passenger's side Was this Gutierrez? Yes Your Honor Who was going to be his chauffeur taking him home anyway? That is what Mr. Lima represents Okay, now Lima is what, 19 years old? I believe so Your Honor And how old were the other participants? I do not know Your Honor, the record does not reflect that Okay Well, if drug dealers are as I suspect they are and Mr. Lima is 19 and innocent I suspect they weren't too worried about his sneaking off But that's speculation I don't know that Your Honor I'm just meeting yours with mine The government is very sincere though that this is not a case that it believes that there is thin evidence I assume you're sincere I mean you wouldn't prosecute the case if you want We assume that you complied with Department of Justice policy when you sought the indictment but that doesn't help us answer the question as to whether as a matter of law this evidence is sufficient to support the conviction Again Your Honor, I would point the Court to the totality of the circumstances What we have largely done here is parse out each part of the transaction and almost like freezing a video and looking at one part of the video No, I'm not doing that I'm taking a look at his whole course of conduct with the notion that he legitimately was a kid who was looking for a ride The guy who gave him the ride took him along He was the passenger He went to a storage locker Bag picked up He goes to another place They switch cars He winds up at the place Gets in the car with the guy with whom he thought he was going to go home And whammo, he's in the middle of a drug deal Looking at it all, trying to figure out where is it in that course of conduct start to finish from his involvement that comports with our prior cases My problem is, as I said right at the beginning You look to going beyond mere presence The cases I've been able to find all have the bystander doing something acting as a scout or doing counter surveillance precious few, if any that have these kind of facts although conceited He's in a car with bad smelling stuff That's the problem I'm wrestling with I'm not deconstructing the totality, believe me According to his inconsistent or maybe partially inconsistent statement to the agent The only time he ever touched that bag was when the CI handed it to him That is correct That may be not enough to get an entrapment instruction but it doesn't sound like he was exercising very much dominion and control over that bag that he might have sat next to in the back seat of the car for a couple of minutes The government would posit that there was constructive possession Again, he was sitting next to a very valuable commodity If he didn't know it was valuable it wouldn't make any difference Suppose it was a pistol but the guy who owned it had a permit to carry it It would be contraband if he didn't have a permit So what difference does it make if he doesn't know Well, I think the transcripts of the tape recording Although Mr. Lima's voice cannot be identified pinpointed with any type of accuracy At that point, Mr. Lima should have been tipped off He knew at that point that there was a drug transaction going down and he made no effort to walk away No, but he did make an effort not to touch the bag Well, according to his testimony, yes Did the CI contradict that? No, the CI did not testify So we're looking at the evidence that's there Okay Turning very briefly to the entrapment instruction It's well established that the defendant only needs to put on slight evidence and here, really the only issue is inducement The government, for purposes of the appeal, would concede that Mr. Lima would be able to show lack of predisposition Here, the standard just is not met in terms of inducement There needs to be, according to the case law an opportunity plus something else or often said that there has to be some type of persuasion or threat brought to bear here At best, this record presents an offering of a mere opportunity or suggestion Mr. Lima's testimony was that the CI offered him the bag and he ultimately took it but then immediately pushed it away which begs the question whether he was even, according to his own testimony induced to commit a crime I would characterize his argument here as being set up as opposed to being entrapped Well, I think the problem with that is in some sense he's arguing a derivative entrapment that it really wasn't the CI who brought about the entrapment but rather it was his confederates The CI was trying to bring him into it so he could deliver a bigger... Yeah, the CI gets the benefit of the body count It goes from 3 to 4 Well, again under the case law there needs to be something more than just a mere offering of the bag And I understand the defendant has argued that, well, Mr. Lima was scared there was a drug transaction going on he wasn't going to refuse it but that pressure wasn't really brought to bear by the CI that pressure was in some sense brought about by the people that he was there with and associating with Unless the court has any further questions Okay, thank you Your Honor, regarding the inducement the inducement was the confidential informant who was a government agent three times attempting to get Mr. Lima to take that bag and move it to transport the drugs inside that bag and that is sufficient twice Mr. Lima rejected that inducement finally the third time he submitted to it and I would direct the court's attention to the reporter's transcript volume 2 pages 75 through 83 where there is that testimony that is a sufficient inducement to allow that to go to the jury and, you know counsel keeps bringing up the fact of the smell of the drug I don't know what black tar heroin smelled like for all I know it could smell like dirty socks that could have been in the bag counsel talks about appellant being involved or near some conversation about drugs but I don't believe there is any evidence that shows he was near that conversation participated in that conversation or even heard the conversation that is devoid in the record I submit that there is no substantial evidence here and that there was sufficient evidence presented on all prongs necessary for both inducement and lack of predisposition to allow that to go to the jury that should have been for the jury to decide not for the court to exclude it counsel very well argued on both sides and the case is submitted we will take a short recess next case to be called will be Dimas v. Panagiotopoulos
judges: Goodwin, Fisher, Tallman